CELIA TENENBAUM, MARSYRO HOLDING CORPORATION and HERMAN AUSUBEL, Substituted Instead and in Place of EMMA L. VERRAN, Respondents, and SAMUEL DAVIS, Plaintiff, *v.* THE SEA GATE ASSOCIATION, Appellant.

Second Department, January 10, 1938.

*Clarence G. Bachrach* [*David Finkelstein* with him on the brief], for the appellant.

*Raphael H. Weissman,* for the respondents.

*Bernard Sperber,* for *amici curiæ* Murray Vernon, Maude A. Thayer and Dorima Corporation.

*Irving Mariash* as *amicus curiæ.*

ADEL, J.   Plaintiff Verran has title to land situated in Sea Gate, a private community.   The title includes certain easement rights to the beach and to the streets.   The questions for decision on this appeal require the finding of the nature and extent of the easements and whether the enjoyment of the easements is an absolute right or is conditioned upon payment of a contributive share of the cost of services furnished by the defendant, The Sea Gate Association.   The defendant owns the fee to the streets and to the beach, and supplies most of the services usually supplied in public communities by a municipality, such as sewage and garbage disposal, policing, etc.

Since the appeal was brought, other persons have succeeded to plaintiff Verran's interest, but by stipulation and order the appeal is to be decided upon the position of plaintiff Verran at the time of the trial.

The Sea Gate community is separated from the public part of Coney Island by a wall or fence that runs north and south across the island.   Entrance to the community is through a gate at Surf avenue.   Inside the community, which includes several streets, there is a further separation — a fence runs substantially parallel with the shore, separating the residence portion of the community from the beach and ocean.   The facts are for the most part not in dispute.

The plaintiff Verran became a member of the defendant association in 1926, and is presently in default in payment of dues, which represent a contributive share of the cost of services to maintain the community.   Since the default the defendant association has refused to admit plaintiff to the beach, and her visitors and guests are admitted to the community through the Surf avenue

gate only when plaintiff is there to identify them, whereas identification of. visitors and guests is customarily made by telephone in the case of property owners who are not in default. The defendant is a membership corporation; its objects are " to provide generally for the care, protection and maintenance of the property at Sea Gate of its members," etc. It has no power to tax, and concedes that the measures it has resorted to in the case of this property owner are according to the rule of the association and for the purpose of inducing payment.

The action is for an injunction. The Special Term has decided in plaintiff Verran's favor, has declared certain rules of the defendant association null and void, and has permanently enjoined it from acting in the manner stated. The court was of opinion that plaintiff's rights of easement to the beach and to the streets exist by reason of a grant to her remote predecessor in title in 1894, and that the defendant association did not take its title in fee to the beach and streets until 1901; that, therefore, the defendant's title is subject to the easements existing in 1901, and that it has no right to interfere with the enjoyment thereof.

Appellant contends that plaintiff has neither legal title nor equitable right to the unrestricted use or enjoyment of the easements.

To understand the contentions it is necessary to note that it has been judicially recognized that there are separate titles to the portions of the land that lie above and below the high-water mark. It was so stated in *Erit Realty Corp.* v. *Sea Gate Assn.* (259 N. Y. 466, at p. 471): " Neither is the question [before us] of whether defendant's lands under water and lands between high and low water marks are subject to an easement in favor of plaintiff. The asserted easement was solely to the ocean beach as shown on the filed map." It is convenient, therefore, to refer to the strip of land that lies between the high- and low-water marks, and that is alternately wet and dry, according to the flow of the tides, as " the foreshore." The strip of land that lies above the high-water mark may be conveniently referred to as " the beach."

In 1892 title to the tract now known as Sea Gate was taken by the Norton Point Land Company, the remote grantor of both plaintiff and defendant.

In 1894 the Verran property was conveyed by the Norton Point Company to Jenkins and Man. The easement clause in those conveyances reads as follows: " The present conveyance is intended to include a free right of way over the principal private street or Road next adjacent to the .premises hereby conveyed to the public thoroughfare called Surf Avenue (as now constructed to the easterly line of the Company's property) and also convenient access to the

beach through the company's proper streets and pathways, but nothing herein nor in said map contained shall be construed as a dedication of the strip of land thirty feet in width along the water front whether the same be adjacent or not to the property hereby conveyed, nor of any street, road or place, the party of the first part reserving the right to change or modify its plans of Norton's Point as well as any streets and roads laid down on said map."

It should be noted that whatever expressed and implied intentions there are that apply to easement rights, the Norton Point Company did not have title to the foreshore in 1894. As will appear hereinafter, probably that was reserved to the public at that time. Jenkins seems to have been a prime mover in the Norton Point development, and was the one who commenced the work of filling in the land and building the fence that runs north and south across the island. The fence was completed some time before the spring of 1897.

In 1897 the Norton Point Land Company acquired from the State, for a consideration, unreserved ownership of the foreshore.

In 1901 the defendant association succeeded to the interest of the Norton Point Land Company, which interest included unreserved ownership of the foreshore. The defendant's interest, however, was, and was stated to be, subject to the then existing easements. As previously stated, however, there had not been and could not have been then existing any valid express easement to the foreshore by reason of the Jenkins and Man conveyances of 1894. In 1897, by resolution, the Norton Point Company declared that all property owners in Sea Gate were entitled to the use of the " Beach Reservation " subject to the company's reservation of the " right at all times to make rules and regulations for the proper government and use of the said Beach or Beach Reservation." The amended complaint does not show that by this resolution plaintiff Verran claims an easement to the foreshore, and the filed maps show that " Beach or Beach Reservation " refers to the strip of land above the mean high-water line.

The beach fence was erected in 1925. Plaintiff Verran took title to her property and became a member of the defendant association in 1926.

From the foregoing I think it is clear (1) that no right of easement to the foreshore was created by the Jenkins and Man conveyances of 1894, and (2) that, with respect to the beach, the covenant provides for " convenient access to the beach through the company's proper streets and pathways;" and if this was intended to grant the right to use of the beach, such a right arises solely by implication. (*Erit Realty Corp.* v. *Sea Gate Assn., supra,* at p. 470.) If an ease-

ment to the foreshore is to be found, it may be that it is necessary to say that an implied right to the beach creates a further implication of right to the foreshore. By liberal construction, however, I am willing to find from all the facts and circumstances that plaintiff's easement, territorially, includes both the beach and the foreshore; but even the right to use the beach is subject " to a reciprocal right in defendant to limit the user by any restriction which might reasonably be expected in such a locality." (*Erit Realty Corp.* v. *Sea Gate Assn., supra,* at p. 471.)

Upon the intentions of the parties and upon equitable considerations, there are strong reasons why it appears that plaintiff Verran's easements are subject to the fulfillment of obligations to the community. Plaintiff Verran took title in 1926. At that time the defendant association had existed for twenty-five years, and the fence across the island had been erected for nearly thirty years. She must be bound by what was obvious and by what Jenkins had within his knowledge. The interests of the majority of the members of the community are large in comparison with plaintiff's, and a single owner should not be suffered to jeopardize the values of the other owners. On the whole, it would not seem that a court of equity should grant plaintiff an injunction against the owner of the fee, restraining the enforcement of the conditions of the easements, particularly where the right to the beach is by implication and the right to the foreshore is uncertain. I do not think that contentions concerning riparian or littoral owners' rights or adverse user are applicable.

With respect to personal identification of guests and visitors at the Surf avenue gate, the decision in this matter seems to be pointed out by the opinion in *Drabinsky* v. *Seagate Association* (239 N. Y. 321). I do not find that the defendant association interfered unjustly with the right of passage over the streets. Even though it is conclusive that defendant may reasonably bar access to and egress from the community (*Erit Realty Corp.* v. *Sea Gate Assn.,* 249 N. Y. 52), no guest or visitor is refused passage over the streets if identified; and there is thus no tendency to diminish the easement. The requirement as to the manner of making identification is well within the power of the defendant in reasonably regulating admission. (Id.)

The judgment should be reversed on the law, with costs, and the complaint dismissed, with costs.

HAGARTY, DAVIS and TAYLOR, JJ., concur; CLOSE, J., concurs in result.

Judgment reversed on the law, with costs, and the complaint dismissed, with costs.